# SUPREME COURT.

## WOODEN agt. WAFFLE.

Has the Code blended common law and chancery pleadings and moulded them into one system, so that now the same rules apply to all actions; or are different rules to be applied according to the nature of the action whether equitable or legal?

The constitution establishes a distinction between law and equity. The Code recognizes this distinction and provides a different mode of trial for legal and equitable actions. And it was the intention of the legislature to blend the modes of proceeding at law and in equity no further than was compatible with the preservation of both jurisdictions.

A mode of pleading which grew out of, and was indissolubly connected with, one form of trial, and one mode of relief, can not in the nature of things, harmonize with opposite modes of trial and relief. (SELDEN, Justice. The reasoning on this question in the case of Rochester City Bank and Lester agt. Suydam and others, 5 How. 216, adhered to.)

What is a material issue? In common law actions it is one which is decisive of the cause. In equity, it is an issue upon a fact which has some bearing upon the equity sought to be established.

An equity pleading generally consists of an aggregation of facts and circumstances without logical dependency, but the accumulated weight of which is claimed to be sufficient to raise or defeat an equity.

If any of the rules of chancery pleading in respect to the statement of facts are to be retained in cases seeking equitable relief, how has the Code modified those rules?

A bill in chancery, formerly contained, first, the necessary allegations to put the court in possession of all the facts going to show both the plaintiff's right to relief, and what that relief should be; and secondly, to obtain through the admissions of the defendant, evidence to support the case.

The first of these principles of pleading has in no way been affected by any provision of the Code. Every reason which ever existed for a full statement of the case, obtains now.

But in regard to the second principle, the Code has made a change. Bills of discovery are abolished (§ 389). An equity pleading now can no longer be made use of for the purpose of examining the opposite party; and whatever is introduced with that view alone must be stricken out as redundant.

Can an answer, under the Code, be made to effect the purposes of a cross bill?

By the true construction of section 149 of the Code, and a clause in § 263, the answer may contain whatever is essential to the defence, stated in a plain and concise manner, and nothing more; and if upon the facts thus stated, it should appear upon the trial that the defendant is entitled to any affirmative relief, it may be had.

Can any matters be stricken out as irrelevant and redundant, which under the former rule would not have been, as impertinent?

12

All that is inserted in a pleading to be used as an examination may now be stricken out as redundant. Statements may be redundant which are neither impertinent nor irrelevant.

To an equity pleading now, may be applied the rule, that mere matters of evidence must not be pleaded; although in a sense somewhat different from that of the common law; not as confining the party to the statement of such facts only as are essential to the cause of action or defence, and upon which a material, that is a *decisive* issue may be taken; but as limiting his right to encumber the record with details which have no other bearing upon the case than to establish some other fact affecting the equitable right in controversy.

*Monroe Special Term, October* 1851.    This is a motion by the plaintiff to strike out portions of the defendant's answer as irrelevant and redundant.

The action is brought upon the equity side of the court to obtain compensation in damages for the flowing of certain lands of the plaintiff, situated upon a stream called Little Black Creek, by reason of the defendant's mill dam, lower down upon the same stream;. and for a perpetual injunction against such flowing.

The grounds of equity jurisdiction relied upon are; that the injury is a continuous one; that the plaintiff has already commenced four suits at law, in four successive years, commencing with the year 1843; that all these suits are defended, and not one of them has yet been brought to a final determination; and that new and additional suits will be continually required, unless the plaintiff can be permitted to establish his claim in this court, and obtain the aid of its equity powers to restrain the wrong complained of. · The complaint contains forty-one folios.

The answer is very voluminous.    It sets up a right to flow the lands in question, resting upon four distinct grounds:

. 1. That there was a separate written grant of the right, which is lost.

2. That it was conveyed as an appurtenance by the deed from the original proprietors and common source of title, to one of the defendant's grantors.

3. That it has become confirmed by twenty years adverse possession and use.

Wooden agt. Waffle.

4. That a parol license was given by the proprietors originally, which was executed by the erection of the dam and mill.

In addition to the facts necessary to show the different branches of the defence, which was set forth with minute particularity, the defendant has introduced into his answer a full history of the proceedings in the four suits at law, inserting the pleadings at length, together with two bills of exceptions, taken upon two successive trials of the first of the four suits, which contain the testimony given upon those trials, and averring that all the testimony given upon his part was true. He further avers that many of the witnesses are aged persons, likely to die before the controversy can be brought to a close; and also that he has discovered new and important testimony bearing upon some of the points in dispute, which he can not have the benefit of upon the trial at law of either of the four suits, for the reason that the parties have entered into a stipulation as to the facts upon which those suits are to be tried.

The answer also contains details of conversations between the parties, and of declarations by and negotiations between them and their counsel, intended to show good faith and proper motives in the litigation, on the part of the defendant, and the want of such motives on that of the plaintiff, which details are not claimed to be necessary or proper in the pleadings for any other purpose than as affecting the question of costs.

In conclusion, the defendant sets up and claims that he has a right under the code to insert in his answer not only all that is essential to his defence in the action, but any matter entitling him to affirmative relief; and that he may now have upon answer alone, all the relief which could formerly have been obtained by cross bill in a court of equity; and he insists that the pleadings and proceedings in the four suits, with all the details attending them, were properly inserted in the answer, for the purpose of having the benefit of the newly discovered evidence in the four suits at law, and of having those suits finally disposed of here upon the equity side of the court, and obtaining a judgment establishing his rights in the premises, and an assessment of

his damages arising from the temporary injunction which has been allowed against him; and also for the purpose of perpetuating the testimony of the aged witnesses.

This is an imperfect sketch of the answer, but sufficient to present the legal questions to be passed upon. The answer contains in all, four hundred and fifty-eight folios.

H. HUMPHREY, *for Plaintiff.*
S. BOUGHTON, *for Defendant.*

SELDEN, Justice.—In that stage of transition through which the forms and modes of judicial proceedings are now passing in this state, there is nothing which occasions more just anxiety than the settlement of those rules and principles which are hereafter to govern parties in making their respective allegations. The science of legal pleading is broken up. Its foundations are now to be relaid, if there is any one who can meet the responsibility of acting judiciously upon the subject with unshaken nerve. I am not the man. It required great boldness to tear down this science; it requires almost equal courage to build up another in its place. But let each one whose duty it may become to aid in the erection of the new edifice, lay his block; and if found not to fit, let more skillful masons remove it and fill the vacancy with another.

The present motion presents several serious and important questions, which for the sake of perspicuity it may be well to state here. They are,

1. Has the Code blended common law and chancery pleadings and moulded them into one system, so that now the same rules apply to all actions; or are different rules to be applied according to the nature of the action, whether equitable or legal?

2. If any of the rules of chancery pleading in respect to the statement of facts are to be retained in cases seeking equitable relief, how has the Code modified those rules?

3. Does the Code authorize a defendant to insert in his answer facts not necessary to his defence, for the purpose of obtaining affirmative relief; and thus secure by the answer alone, all the benefit of a cross bill or cross suit?

*Wooden agt. Waffle.*

4. Does the rule of the Court of Chancery in regard to exceptions for impertinence, that the party excepting must succeed as to the whole exception, or fail as to all, apply to a motion in an equity case to strike out matters as irrelevant and redundant; and can any thing be stricken out as redundant, which would not have been as impertinent?

Upon the first of these questions I have already expressed an opinion in the case of the Rochester City Bank and Lester agt. Suydam and others (5 *How.* 216); but as two of my associates have come to a different conclusion upon the same point, I feel called upon to review my reasoning in that case.

It may now, I think, be considered as settled, that in a purely legal action under the Code, the common law rule which confined the allegations of fact in every pleading to such as were essential to the cause of action or defence; and which, if put in issue, would be decisive of the suit, is *still in force;* and that whatever is inserted beyond these essential facts, in such an action will be stricken out, on motion (Shaw agt. Jayne, 4 *How.* 119; Knowles agt. Gee, *id.* 317; Milliken agt. Cary, 5 *How.* 272; Williams agt. Hayes, *id.* 470).

In the two last of these cases the late Justice SILL and Justice HARRIS have respectively held, contrary to the opinion expressed by Justice WELLES in Shaw agt. Jayne, and by myself in the Rochester City Bank agt. Suydam, that the rule just stated applies no less to equitable than to legal actions; or at least that whatever is redundant in the one is equally so in the other.

Each of these learned justices rests his decision mainly upon the ground that it was the intention of the legislature in adopting the Code to abolish all distinction between common law and equity pleadings. How is this proved?

The constitution establishes a distinction between law and equity. The Code recognizes this distinction, and provides a different mode of trial for legal and equitable actions. Can the two jurisdictions be kept distinct, with different forms of trial and different modes of relief, and yet the same rules of pleading be in all respects applied.?

Nature has made some laws, and these it is difficult to repeal. No one can fail to see the relation which exists between trial by jury and compensation in damages for every injury. One is a necessary consequence of the other.

Could a jury adjust the equities and counter equities in a complicated case, and mete out the precise relief which justice might require? There is a moral impossibility in this. What twelve men would ever agree upon the terms of an equity decree?

Equally impracticable would it be for juries to find special verdicts in such cases embracing the details indispensable to be considered in making up the judgment of the court.

The agency of a jury, therefore, in the judicial process, is incompatible with the adaptation of the relief to the special circumstances of the case. Hence compensation in damages for civil injuries, except in a few cases of proceedings in *rem*, was the only admissible mode of redress in the common law courts.

For similar reasons issues to be tried by a jury were required to be single and decisive. Single, because double and complex issues would tend to embarrass and confuse, and lead to disagreement; and decisive, because otherwise no judgment could follow the finding.

Such issues could not be produced without rules adapted to that end. Hence we see the origin of some of the stringent rules of common law pleading.

It is thus, I think, made clear, that the form of trial by jury, the mode of compensation by damages, and the common law rules of pleading, all bore a natural and necessary relation to each other as cause and effect.

Here, then, is cause enough for the existence of the Court of Chancery. Compensation in damages being an utterly inadequate remedy in numerous cases, the prerogatives of the crown, and the principles of Roman jurisprudence were resorted to, for some other mode of redress in such cases. A court with ample equity powers was the result.

I repeat this reasoning here because, if just, the inference from it is inevitable.

Wooden agt. Waffle.

To suppose that a mode of pleading, which grew out of, and was indissolubly connected with, one form of trial, and one mode of relief, would equally harmonize with opposite modes of trial and relief, is, in my view, repugnant to sound reason.

The need of single and decisive issues to be tried by a jury, and of an expurgated record to produce them, and that of presenting the facts at large to a tribunal which is to adapt the relief to the special circumstances of the case, are antagonistical necessities, and that must be an ingenious mode of pleading which equally accommodates both.

I do not deny that it was the intention of the legislature to blend the modes of proceeding at law and in equity as far as was compatible with the preservation of both jurisdictions. But I insist that it would be unjust to the legislature itself to impute to it the design of abrogating differences which are inherent in the nature of things.

I will examine, for a moment, the *test* of redundancy which Mr. Justice HARRIS gives in Williams agt. Hayes, as applicable to *all cases*, and leave the point.

He says, that the criterion *in every case* is, whether the allegation in question can be made the subject of a *material issue*.

What is a "material issue?" Chitty says "an immaterial issue is where a material allegation in the pleadings is not traversed, but an issue is taken on some other point, which though found by verdict, *will not determine the merits of the cause*" (1 *Chit. Pl.* 692).

Another writer defines an immaterial issue as "one which, passing by what is material in the previous adverse pleading, is joined on an immaterial point; that is *a point not decisive of the right of the cause*" (*Gould's Pl.*, chap. 6, § 27). Of course a material issue is one which is decisive of the cause.

What has this rule to do with an equity case? It is an incident of the mode of trial in common law actions. The verdict of the jury must be decisive, or the court could give no judgment.

The allegations in a pleading at law consist of a *chain* of facts, all tending to establish some definite legal right. An equity

pleading, on the contrary, frequently, if not generally, consists of an aggregation of facts and circumstances without logical dependency, but the accumulated weight of which is claimed to be sufficient to raise or defeat an equity.

If a single link be destroyed in the former the legal conclusion falls; but if you abstract a fact from the latter, you have not *of necessity* broken a chain, but only diminished the weight of the whole. If you have taken enough out of the scales, the equity claimed will kick the beam; but not otherwise.

It follows from this that the term " material issue" can not be applied to an equity pleading in the common law sense, as an issue decisive of the whole case. A material issue in such cases is an issue upon a fact which has *some* bearing upon the equity sought to be established.

If the learned justice intends to apply his test in the common law sense to legal, and in the equity sense to equitable actions, then we agree.

Our second enquiry is, as to the extent to which the Code has modified the rules applicable to the statement of facts in an equity pleading. This question will be considered in its application to a bill or complaint, as the answer in this case is virtually a cross bill.

From what has been said here, and in The Rochester City Bank agt. Suydam, it must, I think, be apparent that there were two distinct reasons for the difference which formerly existed in the manner of making the allegations in a bill in chancery and a declaration at law. Those in the former were made more in detail. First, to put the court in possession of all the facts going to show both the plaintiff's right to relief, and what that relief should be; and, secondly, to obtain through the admissions of the defendant evidence to support the case.

The first of these reasons is in no way affected by any provision of the Code. Equity jurisdiction is retained. It is exercised upon the same principles and to the same extent as heretofore. The mode of trial is the same. The relief is adapted to the circumstances of the case. Every reason, therefore, which ever ex-

isted for a full statement of the case obtains now. But in regard to the second reason the Code has made a change.

By section 389, bills of discovery are abolished; but the section goes further and provides that no examination of a party shall be had on behalf of the adverse party, except in the manner prescribed in that chapter.

This last clause could not have been necessary to prevent a deviation from the provisions of the subsequent sections; it must have referred to some previous mode of examining a party on behalf of the adverse party. It would seem to have been aimed directly at the chancery practice of examining the opposite party by means of the pleadings.

It was natural and appropriate for the legislature to pass from the consideration of the examination of a party by bill of discovery in aid of *another cause,* to that of a similar examination in the *same cause.*

Besides, the term used is appropriate, and covers the case. A bill in chancery was described and treated of in the books as an examination of the defendant as well as a pleading.

I am forced, therefore, to the conclusion that an equity pleading can no longer be made use of for the purpose of examining the opposite party, and that whatever is introduced with that view *alone,* must be stricken out.

This brings us to the third question to be considered, to wit: Can an answer be made to effect the purposes of a cross bill?

It is settled, I believe, that an equitable defence may now be set up in the answer in an action purely legal, ejectment, for instance; but it is clear that in such an action the answer can not go beyond a defence and insert facts with a view to affirmative relief, for the conclusive reason that the mode of trial would be different. The defence must be tried by a jury; the claim to relief by the court.

But in equitable actions this objection does not exist. Are there any other? In Averill agt. Taylor and Vernon (5 *How.* 476), this question arose, but was not decided. There the answer was sought to be used virtually as a cross bill; and upon motion to

Wooden agt. Waffle.

strike out the prayer to that effect, Mr. Justice Cady, before
whom the motion was made, refused to strike it out, declining,
however, to express any decided opinion whether such a prayer
could be granted upon the final disposition of the case or not.   I
might take the same course here; but as the answer in this case
must be redrawn I deem it most judicious to pass upon the question.

Does the Code then authorize what is here claimed?   Section
149 specifies what an answer must contain, to wit: First, a specific denial, &c.   Secondly, a plain and *concise* statement of any
new matter constituting a defence or set off, without unnecessary
repetition.

Here is no authority for inserting any thing in an answer beyond what is essential to the defence or set off.   But section 263
contains this clause: " If a set off established at the trial exceed
the plaintiff's demand so established, judgment for the defendant
must be given for the excess; or if it appear that the defendant
is entitled to any other affirmative relief judgment must be given
accordingly."

It is claimed that this clause impliedly authorizes the course
adopted here.   It would seem that so great a change in the practice ought to have some *express* authority.

The construction contended for would bring this clause in conflict with section 149, which purports to specify all which an
answer may contain.   Being in *pari materia* both sections must
be construed together.

Besides, sections 153 and 154 require the plaintiff to reply to
any new matter in the answer " constituting a defence or set off,"
and if he fails to do so the defendant may have judgment; but
there is nothing in either of these sections, nor in any part of the
Code, requiring him to reply to or answer any new matters seeking an affirmative relief.   How is the defendant to enforce an
answer to any such matter?

Again, a plaintiff may demur to a defence, or to one or more
of several defences.   Suppose a demurrer to a single defence, the
facts constituting which are used in connection with other facts,

Wooden agt Waffle.

:as the ground of affirmative relief. Are the facts admitted for the purposes of the cross suit or not? Or may the plaintiff admit and deny the same facts upon the same record? Let us now look at the pleading upon which the question arises.

1. It sets up four distinct defences to the plaintiff's action.

2. It is a bill to bring four suits at law now pending, into this court upon its equity side to be disposed of.

3. It is virtually a bill of discovery.

4. A bill to perpetuate testimony.

5. An action for damages.

The object of the Code was to simplify proceedings; but this is not simplicity: it is confusion. Does it tend to clearness and precision in judicial proceedings thus to mix them up. The true construction of section 149 of the Code, and the clause in section 263, to which I have referred, taken together, I hold to be this: that the answer may contain whatever is essential to the defence, stated in a plain and concise manner, and *nothing more; and if upon the facts thus stated,* it should appear upon the trial that the defendant is entitled to any affirmative relief, it may be had.

The only question remaining to be considered, is in regard to the extent to which pleadings may be reformed, under the provisions of the Code, respecting irrelevant and redundant matter.

Formerly there was no adequate mode of curtailing prolixity in a chancery pleading. Exceptions for impertinence would not reach many cases of needless detail. The rule that facts and not evidence must be pleaded had no application. The party had a right to make his pleading an " examination" of his adversary. Of course he might insert his evidence in order to obtain an admission. If the matter was relevant it was not impertinent and could not be expunged.

The Code, however, affords the remedy required. The pleading can no longer be used as an examination. All that is inserted for that purpose, therefore, may be stricken out as redundant. Statements may be redundant which are neither impertinent nor irrelevant. We may now apply to an equity pleading the rule that mere matters of evidence must not be pleaded; although in

a sense somewhat different from that of the common law, not as confining the party to the statement of such facts only as are essential to the cause of action or defence, and upon which a material, that is, *decisive* issue may be taken; but as limiting his right to encumber the record with details which have no other bearing upon the case than to establish some other fact, affecting the equitable right in controversy.

The old rule that a party excepting must succeed as to the whole exception, or fail as to all, does not apply with all its original force to a motion to strike out redundant matter. The rule had relation mainly to the question of costs.

The court has an interest in disencumbering the pleadings, and the effect of the Code is to invest it with a discretionary power over them. Special demurrers are abolished; and the more summary remedy by motion may now be made available to accomplish all that is desirable in regulating and reforming abuses in pleading.

As the answer in this case is not drawn in conformity to any one of the principles I have adopted, I shall order it to be stricken out entirely (a power which I think the court can properly exercise by combining its common law authority with that conferred by the Code), and shall allow the defendant forty days after notice of this order to put in a new answer. But as the rules on this subject are unsettled, I will allow no costs of this motion.

NOTE.—The reasoning in this case upon the subject of pleading accords with that in Shaw agt. Jayne, 4 *How.* 119; Knowles agt. Gee *id.* 317; The Rochester City Bank agt. Suydam, 5 *How.* 216; and Alger agt. Scoville, *ante p.* 131. And is adverse to Milliken agt. Cary, 5 *How.* 272; Williams agt, Hayes, *id.* 470.