# Court of Sessions—Albany County.

## June, 1885.

## PEOPLE v. WISE.

INDICTMENT—DEMURRER TO.—INJURY TO PUBLIC RECORD; PEN.
CODE, § 94.—MUTILATION OF ELECTION RETURNS;
PEN. CODE, § 649.—PLEADING OF DOCU-
MENT.—REPUGNANCY.

A count in an indictment under § 94 Penal Code, for mutilating a
document deposited with a public officer, by authority of law, is
demurrable where it appears on the face of the indictment, that the
document in question, so filed with defendant as supervisor, under
the election laws (1 R. S. 7th ed. p. 390, § 48), was a *certified copy*
of the return of the inspectors of election, the statute above cited
requiring that the *original* return should be so filed with the super-
visor.

Section 649 of the Penal Code is directed against misconduct of messen-
gers in charge of election returns, appointed by authority of law, or
those who interfere with such messengers, and the words "or who
willfully does any injury or other act in this section specified," do
not enlarge the scope of the section, or affect any person except those
specified. The section should be so construed with section 94 as not
to make a double crime of one act.

Consequently, where the indictment, in addition to the count above
referred to, contains a count under § 649 Penal Code, such latter
count is demurrable where it fails to allege, (1) that the defendant
was a supervisor, or, (2) that he was a messenger, or, (3) that he
took the certificate from a messenger, or, (4) that the certificate was
to have been used for any legal purpose, or that such use was pre-
vented.

*It seems*, that the common law rule of pleading should apply, and that
both counts of the indictment in such case are bad, where they fail
to set out the document in words and figures, or fail to profess so to
do; and an allegation "in the words and figures, and *in substance*
following, to wit," is insufficient.

The common law doctrine as to repugnant allegations, still obtains under
§ 275, Code Crim. Proc., for if there be inconsistent or incongruous
allegations in a count, the crime cannot be said to be stated plainly,
or at all.

Accordingly, where the charging part of the indictment alleges a tamper-

ing with a certificate of a statement relating to the result of an election, and afterwards a mere copy of a statement is set forth, the count is bad for repugnancy.

DEMURRER to indictment.

The defendant, James J. Wise, was indicted by the grand jury of Albany county, under §§ 94 and 649 of the Penal Code, and a demurrer was interposed by the defendant on the grounds set forth in the opinion.

*D. Cady Herrick,* district attorney, for the people, plaintiff.

*Edward J. Meegan,* for the defendant.

NOTT, County Judge.—The indictment contains two counts predicated on sections 94 and 649 of the Penal Code respectively. To the indictment and severally to each count the defendant demurs, and specifies grounds authorized by section 323 (subd. 4 and 5) of the Code of Criminal Procedure. The points made to sustain the demurrer are briefly these:

*First.* That the indictment should set forth, and also purport to do so, the election returns alleged to be forged and destroyed, and that the words of the indictment, " and was in the words and figures and in substance following to wit," are insufficient.

*Second.* That the first count is defective, because there was authority of law for the defendant as supervisor to receive the original returns only from the inspectors, whereas the paper set forth in the indictment is merely a certified copy of the original.

*Third.* The second count is not brought within the language of section 649 of the Penal Code, and is void for repugnancy.

The district attorney answers these points, by claiming that the arguments to sustain them are mere legal refinements and are inconsistent with the provisions of the Code of Criminal Procedure.

Independent of the recent authority of People *v.* Isaacs, 1 *N. Y. Crim. Rep.* 148, which enforces the common law rule of

pleading in reference to explaining an ambiguous expression by an innuendo, and sustains a demurrer to an indictment for libel for its absence, I should be disinclined to hold that it was the intention of the Legislature in enacting the Criminal Code, to prohibit courts from looking at and applying well-settled rules of the common law to present criminal pleadings and practice, and substitute a practically undefined system, necessarily so from the absence of precedents, involving us in doubt and uncertainty, for the plain and logical rules of the common law. When the Code directly or indirectly makes any provision, it must prevail; but if it is silent, good sense requires we should take our learning and rules from decisions of the courts.

The Code of Civil Procedure, adopted in 1848, was fully as sweeping as the recent Code of Criminal Procedure, and in construing it, the courts hold, in this language, " The legislature, in adopting the Code of Procedure, intended to preserve as many of the rules of the common law as are consistent with the new form of pleading." Knowles *v.* Gee, 8 *Barb.* 300 ; Boyce *v.* Brown, 7 *Barb.* 80 ; Howard *v.* Tiffany, 3 *Sandf.* 695 ; Wooden *v.* Waffle, 6 *How. Pr.* 145.

Under the Code of Criminal Procedure an indictment must contain " a plain and concise statement of the act constituting the crime, without unnecessary repetition " (§ 275), and " words used in an indictment must be construed in their usual acceptation in common language, except words and phrases defined by law, which are to be construed according to their legal meaning " (§ 282), and also " words used in a statute to define a crime, need not be strictly pursued in the indictment, but other words conveying the same meaning may be used " (§ 283). By sections 289, 290 and 291, special rules are provided for certain contingencies in cases of libel, forgery and perjury. An indictment is declared to be sufficient if the act or omission charged as the crime is plainly and concisely set forth, and is stated with such a degree of certainty as to enable the court to pronounce a judgment upon a conviction according to the right of the case (§ 284). I take it that these provisions of the Code require that an indictment should show upon its face a criminal offense and should do so with reasonable certainty; otherwise the section of the Code providing for a demurrer would be

meaningless, for section 323 provides as a good ground of demurrer, " that the facts stated do not constitute a crime."

If on an examination of the indictment I find that no offense is charged by it, and with reasonable certainty, it will be the duty of the court to sustain the demurrer. If, on the contrary, the indictment, fairly construed in the light of the Code provisions, and the rules of common law, so far as applicable, sufficiently charges a crime or crimes, the demurrer must be overruled. I do not think that judges should be over-nice in looking for loop-holes to set aside indictments, but if fundamental principles are violated, there should be no hesitation in doing so.

Does the first count charge a criminal offense? The intention of the pleader evidently is, and as it is expressed in the count, to make out a case under section 94 of the Penal Code. That section enacts, " A person who willfully and unlawfully removes, mutilates, destroys, conceals, or obliterates a record, map, book, paper, document or other thing filed or deposited in a public office or with any public officer by authority of law, is punishable," etc. This count, in brief, charges a mutilation by the defendant of a return of the western election district of the Twelfth ward of the city of Albany, filed with him as supervisor of that ward, and sets forth a copy of the return, which it avers was filed with him, and at the end and as a part thereof has a certificate in these words : " We certify that the foregoing is a true copy of the original statement made by us for the board of county canvassers. Dated this fourth day of November, 1884," and signed by three inspectors of election.

In order to bring a case within this section of the Penal Code, it must appear that the instrument mutilated was filed or deposited with the defendant as a public officer by authority of law; and unless, therefore, the return filed with the defendant was the one the law required him to receive, any mutilation thereof is not within this section. The section does not denounce the mutilation of every paper, but only where the paper is filed or deposited " by authority of law." In the State v. Farrard (3 Hals. 333), it appears that a statute existed punishing as a crime to " willfully, unlawfully, and maliciously tear, cut, burn, or in any other way whatever, destroy any transfer or an assur-

ance of money, stocks, goods, chattels, or other property what-
soever." Farrard having torn an instrument which acknowl-
edged the receipt of certain rye to be sown on shares, it was
held, *first*, it was not an instrument within the statute, and
hence no crime was committed; and, *secondly*, that the instru-
ment set out in the indictment must appear to be papers of
which the crime can be committed. In Ayers *v.* Covill (18
*Barb.* 263), it was held that under the statute for stealing a
record, etc., if the paper was wholly unauthorized and void, it
was not within the statute; that the instrument must be the
one prescribed by the statute in order to make a crime. See
Rex *v.* Morton, 12 *Cox Crim. Cas.* 456. The elementary
writers are equally explicit. "When the statute makes a
forgery of a particular kind indictable, the indictment must
show it to be such, and a variance is fatal." 2 *Whart. Crim.
Law,* § 1467, and cases. Though an allegation cover the statute,
still if it contains also allegations which shows the acts are not
within the statute, it will be insufficient. *Bish. Stat. Crimes,*
§ 621, 2d ed. This same author says, the act forbidden by a
statute must be fully done in all its parts, else the offense is not
complete. *Bish. on Statutory Crimes,* § 225. In Fadner *v.*
People (2 *N. Y. Crim. Rep.* 553), the defendant was indicted
for the forgery of a certificate of a county clerk to an alleged
copy of a decree of divorce; the certificate was not in the form
prescribed by the Code, and it was held to be void and there-
fore did not furnish the basis for an indictment for forgery.
3 *Field's Lawyers' Briefs,* § 538; 2 *Bish. Crim. Law,* § 533,
7th ed.; 1 *Whart. Pr. & Pleadings,* p. 271–281, 4th ed.;
Vincent *v.* People, 5 *Park.* 100.

An examination of the statutes prescribing the duties of
inspectors of election and of supervisors, as affecting election
returns, must now be made, that we may determine the kind of
return that should have been filed or deposited with the de-
fendant.

The duties imposed upon inspectors of election in relation
to canvass and returns are as follows: (1) The canvass shall
be completed by ascertaining how many ballots, etc. (1 *R. S.*
7th ed. p. 389, § 42); (2) a separate canvass shall be made of
presidential and vice-presidential ballots (*Id.* § 43); (3) the

statement to be made by inspectors of the result of the election shall contain a caption stating the day on which, the number of the district, the town or ward, and the county at which the election was held, in relation to which such statement shall be made. Also, showing the whole number of ballots taken for each person, designating the office for which they are given, and at the end thereof a certificate that such a statement is correct in all respects, which certificate shall be subscribed by the inspectors (*Id.* § 44); (4) "a true copy" of the several statements made by the inspectors shall be made and certified by them, and immediately filed by them in the office of the clerk of the town or city (*Id.* § 45); (5) the original statement, duly certified, shall be delivered by the inspectors, or by one of them, to be deputed for that purpose, to the supervisor of the town or ward, within twenty-four hours after the same shall have been subscribed (*Id.* § 48). In addition to the foregoing, a duplicate return is to be filed in the county clerk's office. *Laws of* 1880, ch. 56, § 14, p. 158. To summarize, the inspectors must (1) as a body, or by one deputed for that purpose, deliver the *original* statement, duly certified, to the supervisor of the ward; (2) file a true copy of the statement, duly certified by them, in the town or city clerk's office; (3) file a duplicate return in the county clerk's office.

Referring to the duties of supervisors in reference to election returns, the statute is clear and distinct, requiring the original statement or return to be delivered to the supervisor, and in no case does it contemplate or authorize him to receive a copy thereof. 1 *R. S.* 7th ed. pp. 390, 391, 392, §§ 1, 5, 6, 12, 16, and 17. The statutes recognize four several different forms of returns : first, an original to be given to the supervisor; second, a true copy to be filed in the town or city clerk's office; third, a certified copy to be obtained by the county clerk when the county canvass cannot proceed for lack of returns; fourth, a duplicate under the act of 1880 to be filed in the county clerk's office.

It appears on the face of the indictment that the return charged to be mutilated was not an original return, but a certified copy thereof. A copy could not take the place of the original so far as the supervisor was concerned. As the paper

set forth in the first count was not such an one as the defendant as supervisor should have filed, as deposited with him " by authority of law," the first count cannot consistently with the common law rules of pleading or under the provisions of the Code be sustained, and the demurrer to this count must therefore be allowed.

The second count proceeds under section 649 of the Penal Code, which provides :

" A messenger appointed by authority of law to receive and carry a report, certificate or certified copy of any statement relating to the result of any election, who willfully mutilates, tears, defaces, obliterates, or destroys the same, or does any other act which prevents the delivery of it as required by law ; and a person who takes away from such messenger any such report, certificate, or certified copy, with intent to prevent its delivery, or who willfully does any injury or other act in this section specified, is punishable," etc. This section is evidently leveled against two classes of persons : first, a messenger appointed by authority of law ; second, any person who interferes with such messenger.

It is modeled on 1 *R. S.* 6th ed. p. 449, § 8, which was directed against misconduct of messengers or those who interfere with them. The words " or who willfully does any injury or other act in this section specified," do not enlarge the scope of the section, or affect any person except one who interferes with a messenger. This becomes plain when we recall that section 94 of the Penal Code makes provision for all cases of injury to returns, whether copies or originals, as they must be filed and deposited in a public office or with a public officer, and it would be unreasonable to so construe section 649 as to make a double crime of one act. ·The law forbids that statutes are to be so construed as to multiply crimes or felonies. *Bish. St. Cr.* § 218, 2d ed. ; Commonwealth *v.* Macomber, 3 *Mass.* 439 ; Commonwealth *v.* Keniston, 5 *Pick.* 420. The necessity for section 649· becomes apparent when it is remembered that section 94 does not cover the case of a messenger, who may not in certain cases be a public officer, but may be a mere servant or employee of a public officer.

This count fails to allege (1) that the defendant was a super-

visor, or (2) that he was a messenger, or (3) that he took the certificate from a messenger, or (4) that the certificate was to have been used for any legal purpose, or that such use was prevented; and therefore it appears on the face of this count in the language of the Code, " that the facts stated do not constitute a crime." *Code Crim. Pro.* § 323.

It was a well settled rule of common law pleading, that when the words of a document are essential ingredients of an offense, as in forgery, passing counterfeit money, selling lottery tickets, sending threatening letters, libel ( *Whart. Cr. Pl. & Pr.* § 167, 8th ed.), or a challenge to fight, or for printing, publishing, or distributing obscene papers (Commonwealth v. Tarbox, 1 *Cush.* 66 ; 66, n.), the document should be set out in words and figures, and the indictment must profess to set out the paper (Commonwealth *v.* Wright, 1 *Cush.* 46 ; 2 *Field's Lawyers' Briefs*, § 348 ; 3 *Id.* § 543), and the words " in substance " was not complying with the rule (Commonwealth *v.* Wright, *supra*), nor was " purport" sufficient (1 *Whart. Pr. & Pl.* 264, 4th ed.), and the words "to the tenor following," or " as follows " were the proper words to use. 1 *Whart. Pr. & Pl.*, *supra*. If it was intended by the legislature to abolish these rules, it seems strange that special provision should be made in the Criminal Code for pleading in cases of libel (§ 289), loss or destruction of papers in cases of forgery (§ 290), and in perjury (§ 291).

It seems to me that the safer rule in all these cases not expressly provided for in the Code, is to follow the mandates of the common law pleading. If these rules prevail, both counts of the indictment would fail.

The defendant claims that the second count is bad on its face for repugnancy, which is defined to be "'two inconsistent allegations in one pleading" (1 *Bish. on Crim. Pr.* § 489), and the argument is that as both allegations cannot be true, and there is no means of ascertaining which is meant, the whole will be as though neither existed, leaving the indictment inadequate. 1 *Bishop Crim. Pr.*, *supra*. I am of opinion this rule is still in force. The Code commands the crime to be stated in the indictment plainly and concisely, and without unnecessary repetition (§ 275), and if there be inconsistent and incongruous

allegations in a count, the crime cannot be said to be stated plainly or at all.

The defendant's argument is that the charging part of the indictment alleges a tampering with a certificate of a statement relating to the result of an election, and afterwards sets forth a mere copy of a statement.

In Roberts *v.* State, 2 *Tex. Ct. App.* 4, an indictment for forgery alleged the purport of the forged instrument to be a " check for money on the City Bank of Dallas," and also set out the instrument *in haec verba*, thereby showing it to be a check on a " city bank " without designation of place. It was held bad. State *v.* Bean, 19 *Vt.* 539 ; *Heard's Cr. Pl.* 130 ; Downey *v.* State, 4 *Mo.* 572.

This count was drawn on the theory that there was no discrimination in the form of returns; but there is a marked difference, and if the rules of the common law were to be applied, this count falls within the rule.

In determining this demurrer we are confined to what appears on the face of the indictment. We cannot look beyond it, nor inquire as to proof, or what testimony might be offered. No authority is given the court to wander from the record before it, and it is upon the record, unaided by extrinsic matter, the questions raised must be decided. In allowing the demurrer, as the court feels bound to do, it is proper to say that the district attorney is no way responsible for this result. It is not his duty to make the returns of election officers. When criminal offenses are charged to have been committed, he must take the papers as they are, and the responsibility for errors committed must be upon the parties who are by law required to prepare the returns.

An order will be entered allowing the demurrer.